# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **JESSE R. QUINERLY** | ) | |
| Petitioner | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 03-12552-GAO** |
| | ) | |
| **LUIS SPENCER** | ) | |
| Respondent | ) | |

## MEMORANDUM OF THE RESPONDENT IN SUPPORT OF
## MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS

The respondent submits this memorandum in support of his motion to dismiss the petition for writ of habeas corpus filed by Jesse Quinerly ("petitioner") who was convicted in 1991 for kidnapping, armed robbery, armed assault and rape and sentenced to a total of twenty to thirty years imprisonment. The petitioner alleges that he is entitled to habeas corpus relief on the following eight grounds:[1]

(1) <u>Ground One</u>: conviction obtained by evidence gained in violation of petitioner's 4th Amendment protections against illegal search and seizure and denial of full and fair opportunity to dispute admissibility.

<u>Supporting Facts</u>: Petitioner was denied his right to an exclusionary hearing to dispute the inclusion of evidence gained due to an unlawful detention, premised upon a teletype construed as a general warrant for arrest and seizure. (Petition, p. 5, ¶ 12A)

(2) <u>Ground Two</u>: conviction obtained by evidence gained in violation of defendant's 4th Amendment protections against illegal search and seizure and denial of full and fair opportunity to dispute admissibility.

<u>Supporting Facts</u>: Petitioner was denied an opportunity to contest the inclusion of evidence obtained by a false document purported to be a lawful search warrant presented

---

[1] The respondent is including all the information from the habeas petition regarding the particular grounds asserted because the issues raised are unclear without the added elucidation.

2

to the girlfriend at the petitioner's residence who was threatened when she attempted to view the document, petitioner was denied the opportunity to present these claims. (Petition, p. 5, ¶ 12B)

(3) <u>Ground Three</u>: conviction obtained without allowance of the petitioner to present witnesses in his defense in violation of 5th Amendment;

<u>Supporting Facts</u>: Petitioner actively and vigorously promoted the testimony of his girlfriend, both as witness in support of the suppression of illicit evidence and to support the defense theory of consent by the purported "victim" to the totality of events occurring up to the point of the "victim's" abrupt departure. The Court erroneously accepted hearsay representations of the absent attorney, appointed to the witness. Further the Court neglected to account for the witness surety appearance bond. Further the alleged statement was an invocation of 5th Amendment protections against self-incrimination. This statement was entered into the record in defiance of the witness appearance at the hearing and sworn affidavit. (Petition, p. 6 and Attachment, ¶ 12C)

(4) <u>Ground Four</u>: ineffectiveness of appellate counsel in completely and totally disregarding the petitioner's attestments (sic) and assertions.

<u>Supporting Facts</u>: Appellate counsel was aware or should have been aware of all the above assertions (excepting the deceptions of trial counsel at post trial) and was instructed by the petitioner as to the claims to file and pursue, yet in complete and total disregard to the petitioner's wishes appealed frivolous and unwarranted issues. In absolute defiance to the petitioner/appellant's instructions. ( (Petition, p. 6, ¶ 12D)

(5) <u>Ground Five</u>: ineffective assistance of counsel in both the single assertion and the sum of all allegations. Additionally for failure to defend separate claims presented forthwith.

<u>Supporting Facts</u>: Counsel defied the petitioner's claims and desires to present witness, twice defied the petitioner's demands to move for an evidentiary hearing. (Petition, Attachment, ¶ 12E)

(6) <u>Ground Six</u>: ineffective assistance of counsel in both the single assertion and the sum of all such allegations. Additionally for failure to defend the separate claims presented forthwith.

<u>Supporting Facts</u>: Denied petitioner's demand for further process on the denial of the Court's rejection of defense witness testimony. (Petition, Attachment ¶ 12F)

3

(7) <u>Ground Seven</u>: ineffective assistance of counsel in both the single assertion and the sum of all such allegations.  Additionally for failure to defend the separate claims presented forthwith.

<u>Supporting Facts</u>: Failed to honor petitioner's demand to amend jury instructions and failure of the attorney to object to the introduction of the medical report without benefit of supporting testimony, denying the petitioner's demand to subpoena the medical examiners, threatening the petitioner with a trial disruption and his withdraw should he object to the court as to the manner of his defense.  (Petition, Attachment ¶ 12G)

(8) <u>Ground Eight</u>: ineffective assistance of counsel in both the single assertion and the sum of all such allegations.  Additionally for failure to defend the separate claims presented forthwith.

<u>Supporting Facts</u>: Deceiving the court in post-conviction proceedings as to the substance of pre-trial instructions and conversations and their timing relevant to the trial.  (Petition, Attachment ¶ 12H)

As discussed more fully below, the petitioner has failed to exhaust state remedies on Grounds Four through Eight alleging ineffective assistance of trial, appellate and/or post conviction counsel on various grounds.  The only ineffective assistance of counsel claim that was fairly presented to the state's highest court attacked trial counsel's failure to properly investigate and file a timely motion to suppress physical evidence seized pursuant to a warrant. (Supp. Ans. Exh. 1 at pp. 1, 18-26).  *See Commonwealth v. Quinerly*, 37 Mass. App. Ct. 1121, 643 N.E. 2d 1066 (1994)(Supp. Ans. Exh. 3).  Since this claim is not included in Grounds Four through Eight, these grounds are unexhausted.  Insofar as the petitioner attempted to raise all or some of Grounds Four through Eight in his later post-conviction actions, these grounds are procedurally defaulted.  The Massachusetts Appeals Court deemed issues raised in petitioner's post-conviction motions as "waived" and examined them only to determine whether errors, if any, created a substantial risk of a miscarriage of

4

justice. *Commonwealth v. Quinerly*, 58 Mass. App. Ct. 1105, 789 N.E. 2d (2003)( Supp. Ans. Exh. 9).  As such the claims are not cognizable on federal habeas review.  *See infra.*

As for Grounds One through Three alleging an illegal search and seizure in violation of the Fourth Amendment and the failure to allow the petitioner to present witnesses, the Massachusetts Appeals Court considered similar claims waived and thus these claims are also in procedural default.  For these reasons, the petition should be dismissed.

## PRIOR PROCEEDINGS

In 1991, the petitioner, Jesse Quinerly, was found guilty by a Suffolk County jury of kidnapping, armed robbery, armed assault and rape. In 1993 he obtained a stay of his direct appeal and filed a motion for a new trial.  (Supp. Ans. Exh. 1 at 4).  In 1994 the Massachusetts Appeals Court vacated the stay of the petitioner's direct appeal and affirmed his convictions on November 28, 1994.  *Commonwealth v. Quinerly*, 37 Mass. App. Ct. 1121, 643 N.E. 2d 1066 (1994)(Supp. Ans. Exh. 3).  He sought further appellate review by the Supreme Judicial Court on three grounds: (1) Whether the rape and assault charges should have been dismissed in light of the fact that venue for those charges did not rest in Suffolk County and that the Commonwealth failed to file a motion pursuant to M.G.L. c. 277, § 57A;(2) Whether it was reversible error to deny the petitioner's motions for a required finding of not guilty in light of the lack of venue in Suffolk County and the lack of a M.G.L. c. 277, § 57A motion from the Commonwealth and (3) whether trial counsel rendered ineffective assistance of counsel by failing to properly investigate and to file a timely motion to suppress physical evidence purportedly seized pursuant to a warrant.

**5**

(Supp. Ans. Exh. 4 at 9-10).  **The application for leave to obtain further appellate review (ALOFAR) was denied.**  *Commonwealth v. Quinerly*, 419 Mass. 1106, 646 N.E. 2d 1070 (1995)(Supp. Ans. Exh. 5).

Meanwhile the petitioner's new trial motion languished in the superior court for several years.  (Supp. Ans. Exh. 7 at 2).  Finally , in 2000, the trial judge conducted a lengthy evidentiary hearing and, on March 13, 2001, denied the motion.  (Supp. Ans. Exh. 7 at 3).  The petitioner's subsequent motion for reconsideration was denied.  (*Id.*)  Then on August 8, 2001, the petitioner filed a pro se document which he labeled a "traverse".  *Id.* On August 16, 2001, the judge, treating the traverse as a motion for a new trial, denied the motion on waiver grounds.  The petitioner later filed a notice of appeal from the denial of his traverse and the denial of his motion for reconsideration.  *Id.*

On June 3, 2003, the Massachusetts Appeals Court affirmed the order denying the petitioner's motion for a new trial "substantially for the reasons and on the basis of authorities set for in the brief for the Commonwealth."  *Commonwealth v. Quinerly*, 58 Mass. App. Ct. 1105, 789 N.E. 2d (2003)( Supp. Ans. Exh. 9).  The court deemed the issues presented by the petitioner as "waived" since they were not raised in his direct appeal or in his first motion for new trial at a time when the claims were sufficiently developed in the law.  *Id.* The court then proceeded to examine the claims to determine whether the petitioner had met his burden of showing that the errors, if any, created a substantial miscarriage of justice.  *Id.*  The petitioner's subsequent application for leave to obtain further appellate review was denied on September 5, 2003.  *Commonwealth v. Quinerly*, 440 Mass. 1102, 795 N.E. 2d 573 (2003)(Exh. 11).

6

## STATEMENT OF FACTS [2]

In February of 1991, the victim, Wai Kiew Loh, was employed as the Center Director of the Singapore Economic Development Board ("the Board"), located at 55 Wheeler Street in Cambridge (Tr. 2:93-94). She had use of a red 1990 Pontiac Bonneville automobile that was registered to the Board (Tr. 2:96)

Loh left her office at the Board at about 6:30 P.M. on Friday, February 22, 1991 (Tr. 2:94-95). It was already dark outside, and the weather was windy and cold (Tr. 2:95). Carrying a briefcase that contained a portable computer, she walked to her car, which was parked in a lot across Wheeler Street (Tr. 2:95-97, 100). She put the briefcase on the front passenger seat, walked around to the driver's side, and got into the car (Tr. 2:97). Suddenly, the petitioner ran up to the car, opened the driver's side door, and pushed Loh into the passenger seat (Tr. 2:97-98, 125). After struggling with her for a few minutes, he pulled out a gun and threatened to kill her if she moved (Tr. 2:98).

At his demand, Loh gave the petitioner the car keys (Tr. 2:99). The petitioner started the car and drove out of the parking lot onto Concord Street, towards Belmont (Tr. 2:100-101). He shouted at Loh that he wanted her money (Tr. 2:101). Loh gave him all her American money and some Singaporean and Malaysian notes (Tr. 2:101-102). The petitioner threw the foreign notes back at her, scattering them about the car (Tr. 2:102).

The petitioner drove aimlessly through Cambridge and Belmont, eventually

---

[2]  The Statement of Facts was derived from the Brief of the Commonwealth, Supp. Ans. Exh. 2 at 4-10.  See also the Statement of Facts contained in the Memorandum of Decision and Order on Defendant's Motion for A New Trial, Supp. Ans. Exh. 7 at C.A. 4-6.  The respondent's counsel has obtained a copy of the trial transcripts (8 volumes) which will be submitted if this Court deems their submission helpful and so requests.

7

arriving at the junction of Pleasant Street and Route 2 (Tr. 2:101-103).  He turned onto

Route 2 and drove east towards Cambridge and Brighton (Tr. 2:103).  Whenever he had to

stop at a traffic light, he put his gun to Loh's ribs and demanded that she be quiet (Tr.

2:104-105).  At some point, he explained to Loh that he needed her car because he had

totaled his own car, a Chevrolet, the previous night (Tr. 2:104).

The petitioner eventually drove across a bridge into Brighton and onto Storrow

Drive (Tr. 2:103, 105).  While on Storrow Drive, he took possession of several items

belonging to Loh, including a camera and a pair of sunglasses (Tr. 2:106-108).  He wanted

to go to Lynn (Tr. 2:108) but initially got onto Interstate 93 going the wrong direction (Tr.

2:107-108).  After turning around, he took Route 1 over the Mystic River Bridge (Tr.

2:108).  Between the time he entered Brighton and the time he crossed the Mystic River

Bridge, he intermittently put his gun to Loh's ribs "to threaten [her] so that [she] wouldn't

move"(Tr. 3:3-4).

The petitioner got off the highway at an exit marked "Revere/Lynn" (Tr. 2:109).  He

stopped at a liquor store and got a passing stranger to buy him a six-pack of beer and a

bottle of gin (Tr. 2:109-110).  He forced the victim to drink one of the beers (Tr. 2:110-111).

He then told her that they were "going to play a game" (Tr. 2:111).  He put his gun to her

head, told her that there were two bullets in the gun, and pulled the trigger (Tr. 2:111).

When the gun only clicked, he laughed (Tr. 2:111).[3]  He then forced her to drink some of

the gin and to take off her pants (Tr. 2:112, 116).

---

[3]      Later, the petitioner put his gun to Loh's head and pulled the trigger a second time
(Tr. 2:111-112).

8

As the petitioner drove back onto the highway, he asked Loh if she knew "how to suck a cock" (Tr. 2:112). He then pulled down his pants and underwear, grabbed Loh`s head, and forced her to perform oral sex on him (Tr. 2:112-113). When Loh pretended to faint, the petitioner hit her repeatedly and ordered her to continue performing oral sex on him (Tr. 2:113-114). After stopping briefly to get some food (Tr. 2:114, 116) and to put Loh`s possessions into the trunk (Tr. 2:114-115), the petitioner forced Loh to perform oral sex on him a third time (Tr. 2:117). Again, Loh pretended to faint (Tr. 2:117).[4]

A short time later, the petitioner used Loh`s car phone (which Loh had previously showed him how to use) to call someone named "Elroy" (Tr. 2:117-118). The petitioner said over the phone that he was in a rental car with a "Japanese chick" (Tr. 2:118). Records from the Cellular One telephone company showed that a call was made that night from Loh`s car phone to the number 617-288-8635 (Tr. 4:7), which belonged to Elroy Williams (Tr. 3:100). Williams, a close friend of the petitioner`s (Tr. 3:98), confirmed that the petitioner had called that night and had said that he was in a car with a "Japanese" woman (Tr. 3:101-103, 107).

As he was finishing his telephone call, the petitioner began to slow down to pay the toll at the entrance to the Sumner Tunnel in East Boston (2:119- 121, 3:113-114). Loh took this opportunity to jump out of the still-moving car (Tr. 2:119-121). Anthony Vinciarelli, a passing motorist, let Loh into his car and took her to the East Boston Police Station (Tr. 2:121-123; 3:113-119). After Loh reported the crimes to the police, she was taken to

---

[4]    Loh, who was unfamiliar with the area, could not say whether the rapes occurred in Revere or Lynn (Tr. 2:80). The prosecutor conceded that the rapes might have occurred in Essex County (Tr. 6:44).

9

Massachusetts General Hospital (Tr. 2:123-124).

Three days later, on February 25, 1991, three calls were made from Loh's car phone to Stanley Street Treatment And Resources, Inc., a substance abuse treatment facility in Fall River (Tr. 4:7-8, 14-16). The petitioner checked himself into that facility that same day (Tr. 4:26-27).

On February 28, 1991, at about 9:30 P.M., two Boston police officers spotted Loh's car parked in front of 50 Stanwood Street in Dorchester (Tr. 5:31- 32). About half an hour later, the officers saw the petitioner and a young boy[5] get into the car and drive away (Tr. 5:33). The officers followed and eventually stopped and arrested the petitioner (Tr. 5:33-34).

When the petitioner was booked, the police found Loh's telephone diary and Malaysian notes on his person (Tr. 5:35, 39-40). Loh identified these items at trial (Tr. 2:128-129).

Having been read his *Miranda* rights (Tr. 6:4), the petitioner made a statement in which he denied being Loh's assailant (Tr. 6:6). He claimed that an acquaintance named Eddie had given him the keys to Loh's car so that he could go to the grocery store for some sodas (Tr. 6:4), and that he had found the telephone diary and Malaysian notes on the floor of the car (Tr. 6:7). He also stated that he had spent the previous four days at a substance abuse facility in Fall River (Tr. 6:5) and that he had wrecked his car the night before Loh was abducted (Tr. 6:6).

---

[5]     The boy was later identified as the son of the petitioner's girlfriend (Tr. 6:8).

10

At about 10:30 or 10:45 P.M. that night, the police obtained a warrant to search the petitioner's home at 50 Stanwood Street, Apt. 2, in Dorchester (Tr. 6:8). When they executed the warrant, they found the petitioner's girlfriend, Juliana Delaney, wearing a pendant that belonged to Loh (Tr. 6:8). They also found Loh's briefcase, portable computer, and handbag in the apartment (Tr. 6:9). Loh identified these items at trial (Tr. 2:129-133).

The week before trial, the petitioner revealed to defense counsel that Delaney had told him that the police had begun searching his home before they obtained the search warrant (Tr. 2:60, 64). On the Sunday before trial, counsel called Delaney, who purportedly confirmed the petitioner's story (Tr. 2:60-61). Counsel asked Delaney to swear to her claims in an affidavit, but advised her that her claims might subject her to prosecution for receiving stolen property (Tr. 2:61-62). Delaney told counsel that she wanted an attorney before making out an affidavit (Tr. 2:62).

The petitioner's defense counsel informed the judge of Delaney's allegations on the first day of trial (Tr. 2:60-62). He asked the judge to appoint an attorney for Delaney and to prohibit the prosecutor from mentioning the evidence found in the petitioner's home in his opening argument (Tr. 2:62). The judge granted the first request but denied the second (Tr. 2:65). After speaking with an attorney, Delaney invoked her right against self-incrimination (Tr. 3:110).

Boston Police Officer Joseph F. Freeman testified at trial that he had reported to an accident scene in Dorchester at about 2:00 A.M. on the night before the abduction (Tr. 5:27). The petitioner had identified himself as one of the drivers involved (Tr. 5:27-28).

11

The petitioner's car, a Chevrolet, had been badly damaged (Tr. 5:28).

<u>ARGUMENT</u>

I.      **THE PETITION SHOULD BE DISMISSED FOR FAILURE TO EXHAUST STATE REMEDIES ON EACH AND EVERY CLAIM ASSERTED.**

The pro se petitioner has presented eight grounds in support of his petition for relief. *See infra.* at 1-3. These claims either have never been presented to the state's highest court in the same legal or factual context as appears in the petition or have been procedurally defaulted.

It is well settled that "a federal court will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application." *Adelson v. DiPaola*, 131 F.3d 259, 261 (1st Cir. 1997) (*citing Rose v. Lundy*, 455 U.S. 509, 518-19 (1982)). *See also Picard v. Connor*, 404 U.S. 270, 276 (1971); 28 U.S.C. § 2254(b)(1)-(2). In addition to ensuring that state courts have the first opportunity to correct their own federal constitutional errors, the exhaustion requirement enables federal courts to accord appropriate respect to the sovereignty of the states and thus promotes comity by "minimiz[ing] friction between our federal and state systems of justice...." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). *See also Rose,* 455 U.S. at 518 (reiterating importance of exhaustion doctrine); *Mele v. Fitchburg District Court*, 850 F.2d 817, 819 (1st Cir. 1988) (same).

Consequently, before filing an application for habeas corpus relief in federal court, the petitioner must have first presented the substance of each of his federal habeas claims to the state's highest tribunal. *Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan v.*

12

*Boerckel*, 526 U.S. 838, 847 (1999); *Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir. 1987); *Mele*, 850 F.2d at 819. This means that the petitioner must have submitted both the predicate facts and the federal legal theories to the state's highest court. *Gagne*, 835 F.2d at 7; *Mele*, 850 F.2d at 819-20. A habeas court need not comb a habeas petitioner's entire state court record to discover a federal constitutional issue. *Baldwin v. Reese*, 541 U.S. at 29. To exhaust an issue, a petitioner must have presented his federal constitutional claim to the Supreme Judicial Court within the four corners of his application for leave to obtain further appellate review (ALOFAR). *Id*. at 32; *Castillo v. McFadden*, 399 F. 3d 993, 999 (9th Cir. 2005); *Mele*, 850 F. 2d at 823.

Moreover, *every* claim must have been exhausted. *Rose*, 455 U.S. at 522; *O'Sullivan*, 526 U.S. at 848. If a petition is "mixed" – that is, contains both exhausted and unexhausted claims – it must be dismissed.[6] *Rose,* 455 U.S. at 522; *Adelson*, 131 F.3d at 261-62; *Martens v. Shannon*, 836 F.2d 715, 717-18 (1st Cir. 1988). Finally, a habeas petitioner "bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim." *Adelson*, 131 F.3d at 262.

---

[6] **Prior to enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), failure to exhaust all claims in state court required dismissal of the entire petition. Under AEDPA, a court confronted with unexhausted claims may, in its discretion, either dismiss the entire petition as unexhausted or deny (but not grant) the petition on the merits. See 28 U.S.C. § 2254(b)(1)-(2) ("[a]n application for a writ of habeas corpus may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State") (emphasis added). Thus, the Court may deny the entire petition, but may not dismiss the unexhausted claims and then grant the petition on the basis of any remaining claims. Id.; O'Sullivan, 526 U.S. at 842-48 (affirming dismissal of petition containing unexhausted claims).**

13

The record indicates that Grounds Four through Eight are unexhausted.  In Grounds Four through Eight the petitioner alleges ineffective assistance of trial and/or appellate and/or post-conviction counsel for numerous alleged failings, omissions or missteps.  He complains that appellate counsel failed to raise in his direct appeal illegal search and seizure issues under the Fourth Amendment and the failure to allow him to present a witness in violation of the Fifth Amendment (Ground Four); that unspecified counsel failed to move for an evidentiary hearing on a matter (Ground Five); that unspecified counsel denied his demand for further process regarding the rejection of defense witness testimony (Ground Six); that trial counsel failed to honor petitioner's demand to amend jury instructions or to object to the introduction of a medical report or to subpoena the medical examiners and threatened the petitioner with trial disruption and his withdrawal should petitioner object to defense manner (Ground Seven); and unspecified counsel deceived the court in post-conviction proceedings as to the substance of pre-trial instructions and conversations and their timing relevant to the trial (Ground Eight).

None of these issues were exhausted as presented in the petition.

In his application for leave to obtain further appellate review (ALOFAR) in the SJC, following the Massachusetts Appeals Court's 1994 decision affirming his convictions, the petitioner included an ineffective assistance of counsel claim, focusing only on trial counsel's failure to file a suppression motion.  (Supp. Ans. Exh. 4 at 1, 13-19).  Specifically, the petitioner claimed that he was denied the effective assistance of counsel in violation of the state and federal constitutional right to counsel "because trial counsel failed to file a

14

timely motion to suppress physical evidence purportedly seized pursuant to a warrant; this failure ultimately led to a drastic and damaging change in the defense strategy." (Supp. Ans. Exh. 4, p. 1). [7] The petitioner alleged that, after he was arrested, the Boston police sought and obtained a search warrant for an apartment where he lived with his girlfriend and her son. (Supp. Ans. Exh. 4 at 7-8). As a result of the search the police seized items from the apartment and from the girlfriend that belonged to the victim and were taken from her car on the night of the attack. The evidence was introduced to show a connection between the petitioner and indicated that he had been in the victim's car and had taken the items. It also corroborated the victim's testimony. The week before trial the petitioner revealed to his attorney that his girlfriend had told him that the police had begun searching his home before they obtained the search warrant. The petitioner's girlfriend declined to sign an affidavit attesting to the allegation and invoked her right against self-incrimination at trial. (Supp. Ans. Exh. 4 at 7-9). Thus, argued the Commonwealth, there was no basis for defense counsel to file a motion to suppress. (Supp. Ans. Exh. 2 at 20-21). In his ALOFAR, the petitioner asserted only that defense counsel's failure to move to suppress the items seized in the apartment deprived him of the effective assistance of trial counsel and caused him to change his trial strategy to one of "consent" because of the damaging physical evidence seized. (Supp. Ans. Exh. 4 at p. 15).

Some years later, in his appeal from the denial of his motion for a new trial, the petitioner took a different tack now raising a Fourth Amendment challenge, claiming that

---

[7] In its decision, the Massachusetts Appeals Court had found simply that there was no merit to the argument that trial counsel was ineffective for failing to file a motion to suppress. (Supp. Ans. Exh. 5 at 1-2).

the police lacked probable cause to arrest him and to search his home in violation of the Fourth Amendment. (Supp. Ans. Exh. 7 at 9). The Commonwealth pointed out in its brief that the petitioner had thrice waived any claim relating to the lack of probable cause to for the arrest and search-- by failing to raise them in a timely pretrial motion or on direct appeal or in his first motion for new trial. (Id.) The Massachusetts Appeals Court agreed that the petitioner had waived the claims and proceeded to review the errors, if any, to determine if there was a substantial risk of a miscarriage of justice. (Supp. Ans. Exh. 9). *See infra.*

Thus the only claim that reached the state's highest court on the merits in compliance with the exhaustion requirement of 28 U.S.C. § 2254 (B)(1)(a) is ineffective assistance of trial counsel due to trial counsel's failure to file a timely motion to suppress physical evidence seized pursuant to a warrant. The only ground that comes close to approximating this claim is Ground Four which murkily contends that appellate counsel was constitutionally ineffective for not recognizing illegal search and seizure issues alluded to in Grounds One though Three. (Petition, pp. 5 and Attachments, ¶ 12A-12C). However since the only ground exhausted claimed ineffective assistance of trial counsel, Ground Four is unexhausted as well as Grounds Five through Eight. *Baldwin v. Reese*, 541 U.S. at 29 (petitioner failed to specify that appellate as well as trial counsel was ineffective under federal law); *Castillo v. McFadden*, 399 F. 3d at 999.

Thus Grounds Four through Eight alleging ineffective assistance of various counsel on myriad grounds have never properly been presented to the state's highest court and are unexhausted. Pursuant to *Rose v. Lundy*, 455 U.S. 509, 522 (1982), the entire petition

16

should be dismissed.

## II.     GROUNDS ONE THROUGH THREE ARE IN PROCEDURAL DEFAULT

"The habeas corpus anodyne is designed neither to provide an additional layer of conventional appellate review nor to correct garden-variety errors, whether of fact or law, that may stain the record of a state criminal trial.  Rather, the remedy is limited to the consideration of federal constitutional claims."  *Burks v. DuBois*, 55 F.3d 712, 715 (1st Cir. 1995).  *See Herrera v. Collins*, 506 U. S. 390, 400 (1993) (affirming that the purpose of federal habeas corpus review is to ensure that individuals are not imprisoned in violation of the Constitution).  *See also Barefoot v. Estelle*, 463 U. S. 880, 887 (1983) ("Federal courts are not forums in which to relitigate state trials").  Thus, federal habeas review is precluded, as a general proposition, when a state court has reached its decision on the basis of an adequate and independent state-law ground.  *See Coleman v. Thompson*, 501 U. S. 722 (1991).  In *Coleman*, the Supreme Court held that where

> a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule,
> federal habeas review of the claim is barred unless the prisoner can
> demonstrate cause for the default and actual prejudice as a result of
> the alleged violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental miscarriage of justice.

*Id.* at 750.  *See Tart v. Massachusetts*, 949 F.2d 490, 496-497 (1st Cir. 1991); *Palmariello v. Superintendent of M.C.I. Norfolk*, 873 F.2d 491, 493 (1st Cir.), *cert. denied sub nom., Palmariello v. Butler*, 493 U. S. 865 (1989).  A petitioner's procedural default constitutes an adequate and independent state ground so long as the state consistently applies the rule and has not waived it.  *Wainwright v. Sykes*, 433 U. S. 72, 87 (1977); *Burks v. DuBois*, 55

17

F.3d at 716; *Puleio v. Vose*, 830 F.2d 1197, 1199 (1st Cir. 1987), *cert. denied*, 485 U. S. 990

(1988).

Grounds One through Three pertaining to illegal search and seizure were deemed

"waived" claims by the Massachusetts Appeals Court since they were not raised in the

petitioner's direct appeal or in his first motion for new trial at a time when the claims were

sufficiently developed. *Commonwealth v. Quinerly*, 58 Mass. App. Ct. 1105, 785 N.E. 2d

1093 (2003)(Supp. Ans. Exh. 9). By this finding, the Appeals Court determined that these

claims are in procedural default. *See* Mass. R. Crim. P. 30(c)(2), 378 Mass. 901 (1979).

Any discussion of the merits of these issues was done only to determine whether there was a

risk of a substantial miscarriage of justice and did not constitute a waiver of the procedural

bar. *See Harris v. Reed*, 489 U. S. 255, 266 (1989) (appellate court may, in the alternative,

discuss the merits without waiving the procedural bar). Waiver can occur if the state court

reaches an issue on the merits and its decision is based on or intertwined with federal

constitutional law, *Coleman v. Thompson*, 501 U.S. 722, 735 (1990), but it is well established

that consideration of an issue under the Massachusetts "miscarriage of justice" standard

does not amount to waiver of the procedural bar, *Tart v. Massachusetts*, 949 F.2d 490, 496-

97 (1st Cir. 1991); *Gibson v. Butterworth*, 693 F.2d 16, 17-18 (1st Cir. 1982). The Appeals

Court's formulation, that there was no substantial risk of a miscarriage of justice, and their

discussion of the issues are typical of "discretionary, and necessarily cursory, review" that

has been held not to indicate a waiver. *Tart*, 949 F.2d at 496. *See Commonwealth v. Curtis*,

417 Mass. 619, 623, 632 N.E.2d 821, 825 (1994) (errors not properly preserved for appellate

review considered under "substantial risk of a miscarriage of justice" standard). "[A]

18

state's efforts to stop gross miscarriages of justice should not suddenly force it to grapple with complex federal issues that its procedural rules would otherwise lawfully bar." *McCown v. Callahan,* 726 F.2d 1, 4, (1st Cir.), *cert. denied*, 469 U.S. 839 (1984).

The appellate courts of Massachusetts regularly enforce the Rule 30(c)(2) waiver rule. Under Massachusetts law "[a] 'motion for a new trial may not be used as a vehicle to compel a trial judge to review and reconsider questions of law' on which a defendant has had his day in an appellate court, or foregone that opportunity." *Forgerty* v. *Commonwealth*, 406 Mass. 103, 107, 546 N.E.2d 354, (1989), *quoting Commonwealth* v. *McLaughlin*, 364 Mass. 211, 229, 303 N.E.2d 338 (1973). *See Commonwealth* v. *Watson*, 409 Mass. 110, 112, 565 N.E.2d 408 (1991). *See Commonwealth* v. *Gagliardi*, 418 Mass. 562, 567, 638 N.E.2d 20 (1994), *cert. denied*, 513 U.S. 1091 (1995). The Appeals Court enforced the rule and its finding that the petitioner's claims were waived clearly rests on his default of state procedural law.

Federal habeas corpus review of the petitioner's defaulted claims is precluded absent a showing of both cause for and prejudice from the procedural default. *Coleman v. Thompson*, 501 U. S. at 750; *Harris v. Reed*, 489 U. S. at 262; *Wainwright v. Sykes*, 433 U. S. 72, 87 (1977); *Gibson v. Butterworth*, 542 F.Supp. 6 (D. Mass.), *aff'd*, 693 F.2d 16 (1st Cir. 1982). Petitioner must persuade the court of both "cause" and "prejudice" to overcome the procedural default. *Burks*, 55 F.3d at 716. The petitioner has not and cannot demonstrate either.

Petitioner cannot show "cause" for his failure to assert his claims in prior actions. "[T]he existence of cause for a procedural default must ordinarily turn on whether the

19

prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Magee v. Harshbarger*, 16 F.3d 469, 471 (1st Cir. 1994). To clear the prejudice hurdle, petitioner must demonstrate "not merely that the errors at his trial created a <u>possibility</u> of prejudice, but that they worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original), quoted in *Ortiz v. DuBois*, 19 F.3d 708, 714 (1st Cir. 1994), *cert. denied*, 115 S. Ct. 739 (1995). Nor can the petitioner overcome his procedural defaults by showing a "fundamental miscarriage of justice" -- the conviction of an innocent person. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). The overwhelming evidence against the petitioner at trial which convinced a jury to convict the petitioner on all counts precludes him from even suggesting that he is actually innocent. *See infra*, Statement of Facts at 6-11.

III.  **EVEN IF THE PETITIONER IS NOT BARRED FROM PRESENTING HIS CLAIMS, THERE IS NO BASIS FOR HABEAS CORPUS RELIEF.**

　　Putting aside the issues of exhaustion and procedural default, it is clear that the only exhausted claim raised by the petitioner that was fairly presented to the Supreme Judicial Court was that trial counsel was ineffective for not filing a motion to suppress the physical evidence admitted at his trial. (Supp. Ans. Exh. 1 at 1, 18-26). This issue is not presented face up and squarely in the Petition but appears to be lurking within the petitioner's dense, impenetrable prose and suggested in some of the grounds. In an excess of caution respondent's counsel will assume only for the sake of argument that the issue is relevant to

20

the matter before the court.   Clearly the Massachusetts Appeals Court and Supreme

Judicial Court's decision rejecting the claim is not contrary to nor an unreasonable

application of clearly established Supreme Court law.

Because the instant petition for writ of habeas corpus was filed after the effective date

of the Antiterrorism and Effective Death Penalty Act (AEDPA), this Court's review of his

claims is governed by that statute. *Lindh v. Murphy,* 521 U.S. 320, 336 (1997).  The relevant

statutory provision, 28 U.S.C. § 2254(d)(1), states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the Supreme
>> Court of the United States;

In *Williams v. Taylor,* 529 U.S. 362, 412 (2000) (O'Connor, J., Opinion of the Court)

the Supreme Court gave independent meaning to both the "contrary to" and the

"unreasonable application" clauses of the statute.  *See id.* at 405.  Under the first prong of §

2254(d)(1), the Court stated that a decision may be "contrary to . . . clearly established

Federal law, as determined by the Supreme Court of the United States," 28 U.S.C.

§ 2254(d)(1), in two ways.  First, "[a] state-court decision will certainly be contrary to our

clearly established precedent if the state court applies a rule that contradicts the governing

law set forth in [the Supreme Court's] cases."  *Williams,* 529 U.S. at 405.  Second, "[a]

state-court decision will also be contrary to this Court's clearly established precedent if the

state court confronts a set of facts that are materially indistinguishable from a decision of

21

this Court and nevertheless arrives at a result different from our precedent." *Id.* at 405-406. [8]

Under the second prong of § 2254(d)(1), "[a] state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case" qualifies as "'an unreasonable application of . . . clearly established Federal law.'" *Id.* at 407 (quoting 2254(d)(1)).  In determining whether a state-court decision unreasonably applies Supreme Court precedent, "a federal habeas court should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.  As the Court stressed, "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original).  Under the "unreasonable application" clause,  a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable. *Id.* at 411.  The First Circuit recently explained the degree of error that must be shown by the petitioner to reach the level of an "objectively unreasonable" state court decision. "[S]ome increment of incorrectness beyond error is required….The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge v. Hall,* 303 F.3d

---

[8] The court interpreted the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," a phrase shared by both clauses, to "refer[] to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.  The statute thus "restricts the source of clearly established law" to the Supreme Court's holdings. *Id.*

22

24, 36 (1ˢᵗ Cir. 2002) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000).

In *Williams v. Taylor*, 529 ,U.S. at 390-391, the Supreme Court held that *Strickland v. Washington*, 466 U.S. 668 (1984) was the clearly established federal law that controlled claims related to ineffective assistance of counsel. The First Circuit has held that the state standard for ineffectiveness of counsel contained in *Commonwealth v. Saferian*, 366 Mass. 89, 315 N.E. 2d 878 (1974), is "functionally identical to the federal standard" of *Strickland. Scarpa v. Dubois*, 38 F. 2d at 7. The *Strickland/Saferian* analysis may be stated as follows: to determine whether counsel's performance was sufficient under the Sixth Amendment, the inquiry "is whether counsel has brought 'to bear such skill and knowledge as will render the trial a reliable adversarial testing process.'" *Scarpa v. DuBois*, 38 F.3d 1, 8 (1st Cir. 1994), *cert. denied*, 513 U.S. 1129 (1995), *quoting Strickland v. Washington*, 466 U.S. 668, 688 (1984). *See Bell v. Cone*, 122 S.Ct. at 1850. The petitioner bore the heavy burden of proving ineffective assistance, *Scarpa v. DuBois*, 38 F.3d at 8-9; *Commonwealth v. Saferian,* 366 Mass. at 96, which required a two-part analysis. First, the petitioner is required to show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690. That is, he needs to establish "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The standard "demands a fairly tolerant approach," *Scarpa v. DuBois*, 38 F.3d at 8, as the Constitution does not guarantee "a letter-perfect defense or a successful defense." *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir. 1991), *cert. denied*, 502 U.S. 1079 (1992). *See Williams v. Taylor*, 529 U.S. at 390-391; *Matthews v. Rakiey*, 54 F.3d 908, 916 (1st Cir.

23

1995).

The state court was not to apply the performance standard "in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." *United States v. Natanel*, 938 F.2d at 309. Moreover, that court was required to "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Scarpa v. DuBois*, 38 F.3d at 8, *quoting Strickland v. Washington*, 466 U.S. at 689. *See Genius v. Pepe*, 147 F.3d 64, 66 (1st Cir. 1998) ("counsel's judgments in formulating the defense strategy are entitled to substantial deference"), *cert. denied sub nom., Genius v. Hall*, 526 U.S. 1121 (1999). But this is only the first part of the test. The petitioner is also required to demonstrate to the state court that he was prejudiced by counsel's alleged errors- that is, he is required to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694; *Scarpa v. DuBois*, 38 F.3d at 8, 16. *See Bell v. Cone*, 122 S.Ct. at 1850. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694. Finally, counsel's alleged blunders were not to be "judged solely by the 'surrounding circumstances' of the representation, but, rather, [were to] be judged [by the state court] in light of the whole record, including the facts of the case, the trial transcript, the exhibits, and the applicable substantive law." *Scarpa v. DuBois*, 38 F.3d at 15. *See Matthews v. Rakiey*, 54 F.3d at 911.

The Massachusetts Appeals Court summarily rejected the petitioner's allegation that trial counsel was ineffective for failing to file a motion to suppress the items stolen from the

24

victim that were found in the petitioner's apartment. (Supp. Ans. Exh. 3).  Its decision was fully in line with *Strickland* 's reasoning.[9]

Trial counsel actions were not outside the range of competent counsel.  The petitioner did not reveal to his attorney until one week before trial that his girlfriend, Delaney,  had said that the search began before the search warrant was obtained.  Only one day remained before trial when he was able to contact Delaney and confirm the allegation.  Even then Delaney was reluctant to swear to her allegations in an affidavit.  Any proposed motion to suppress was doomed without such an affidavit.  It is extremely unlikely that the trial judge would have been convinced that the police had falsified the search warrant return without a first hand affidavit or live testimony.  Since Delaney would not let the judge evaluate her credibility on the stand, any motion to suppress would have been futile.  Counsel is not ineffective for failing to file a motion that had little or no chance of success.  *Commonwealth v. Conceicao*, 388 Mass. 255, 264 (1983).

The  petitioner also failed to prove that he was prejudiced by the failure of trial counsel to file a motion to suppress.  Even without the items found in the petitioner's home, the evidence identifying him as the victim's assailant was overwhelming.  The petitioner was driving the victim's car and had her telephone diary and Malaysian notes on his person when he was arrested. (Tr. 5:33-35).  He further identified himself as the victim's assailant by calling his friend Elroy Williams on her car phone during the abduction and

---

[9]  Although the Appeals Court did not cite *Strickland*, the Supreme Court has held that to comply with federal precedent a state court need not be aware of or cite their precedent "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, (2002).

25

also telephoning his substance abuse facility which he entered the same day as the attack.

He told the victim that he had wrecked his car the night before which was confirmed by

other testimony.  Moreover the victim was able to identify the petitioner as her attacker at

trial (Tr. 2:125).  Clearly the Massachusetts Appeals Court's decision correctly applied the

*Strickland* two prong analysis in rejecting the petitioner's unsupported allegation that he

was denied the effective assistance of trial counsel.  Their decision was not contrary to nor

an unreasonable application of *Strickland*.

## CONCLUSION

For the above-stated reasons the motion to dismiss the petition should be allowed.

Respectfully submitted,
THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Annette C. Benedetto
Annette C. Benedetto
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200
BBO No. 037060