UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JESSE QUINERLY,                )
                               )
            Petitioner,        )        CIVIL ACTION
      v.                       )        NO. 03-12552-GAO
                               )
LUIS SPENCER,                  )
                               )
            Respondent.        )

# REPORT AND RECOMMENDATION ON RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS

February 17, 2006

DEIN, U.S.M.J.

## I. INTRODUCTION

The Petitioner Jesse Quinerly ("Quinerly" or "Petitioner") was found guilty on November 5, 1991 by a Suffolk County jury of armed robbery, assault by means of a dangerous weapon, and three counts of aggravated rape and kidnapping. On November 6, 1991, he was sentenced to concurrent terms of twenty to thirty years on the aggravated rape and armed robbery indictments, a term of nine to ten years on the kidnapping indictment and a term of four to five years on the assault with a dangerous weapon indictment, to run concurrently with the twenty to thirty year sentences. Quinerly has filed a timely petition for a writ of habeas corpus alleging eight Grounds he contends warrant reversal of his convictions. The Respondent[1] has moved to dismiss the petition

---

[1] The Respondent is the Superintendent of MCI, Norfolk.

on the basis that the Petitioner has failed to exhaust his state remedies with respect to Grounds Four through Eight alleging ineffective assistance of counsel, and that Grounds One through Three alleging an illegal search and seizure in violation of the Fourth Amendment are procedurally defaulted.  He has also moved to dismiss on the grounds that the claims are without merit.

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Respondent's Motion to Dismiss (Docket No. 31) be ALLOWED.  While this court does not find that all of Grounds Four through Eight should be dismissed for failure to exhaust, and does not find that all of Grounds One through Three have been procedurally defaulted, the claims which do survive such inquiry do not support the issuance of habeas relief.

## II.  <u>STATEMENT OF FACTS</u>[2]

### <u>The Underlying Crimes</u>

The facts relating to the crimes of which the Petitioner was convicted are relevant only to the extent necessary to place the arguments raised by Petitioner's various motions, appeals and the habeas petition, in context.  Therefore, the facts, which are detailed in the Respondent's Memorandum in Support of Motion to Dismiss (Docket No. 32) ("Mem."),[3]

---

[2]  The Respondent has filed a Supplemental Answer ("SA") containing relevant pleadings (Docket No. 13).  Quinerly has also filed a Supplemental Appendix ("QSA") and an Addition to his Supplemental Appendix ("QSA2") (found at Docket Nos. 38 and 39, respectively).

[3]  The Respondent's facts are derived from the September 1994 direct appeal brief of the Commonwealth (SA Ex. 2) at 4-10 and the Memorandum of Decision and Order on Defendant's Motion for a New Trial (SA Ex. 7) at C.A. 4-6.  This court also has reviewed the Petitioner's

will be summarized only briefly. The Petitioner has not included any statement of facts in his Opposition to the Respondent's Motion to Dismiss ("Opp.") (Docket No. 37).

In February, 1991, the victim, Ms. Loh, was employed as the Center Director of the Singapore Economic Development Board in Cambridge. She used a red 1990 Pontiac Bonneville automobile that was registered to the Board. On Friday, February 22, 1991, Loh left work and got into her car. A man ran up to the car, pushed his way in to the driver's seat and pulled a gun on the victim, threatening to shoot if she moved. The assailant demanded and obtained the car keys from Loh, and drove for a long time, repeatedly threatening the victim with the gun.

During this ordeal, the assailant forced the victim to perform oral sex on him on several occasions. He played "Russian roulette" with her, telling her there were two bullets in the gun, and pulling the trigger. He demanded her money and received American money and some notes from Singapore and Malaysia. He also obtained from her a camera and a pair of sunglasses.

At some point, the assailant explained to Loh that he needed her car because he had totaled his own car, a Chevrolet, the previous night. He used Loh's car phone to call someone named "Elroy." The assailant told "Elroy" that he was in a rental car with a "Japanese chick." Phone records show that a phone call was made to Elroy Williams,

---

facts as contained in his direct appeal brief (SA Ex. 1) and found them to be consistent with the Respondent's facts.

Quinerly's close friend. Williams confirmed that Quinerly called that night and said that he was in the car with a Japanese woman.

When the assailant slowed the car to pay a toll at the entrance to the Sumner Tunnel in East Boston, Loh jumped out of the still-moving car. A passing motorist took her to the East Boston Police Station. She was then taken to Massachusetts General Hospital.

Three days later, on February 25, 1991, three calls were made from Loh's car phone to an abuse treatment facility in Fall River. Quinerly checked himself into the facility on that day.

On February 28, 1991, Loh's car was seen in Dorchester by two Boston police officers. The police saw Quinerly and a young boy, later identified as Quinerly's girlfriend's son, get into the car and drive away. The officers followed and eventually stopped and arrested Quinerly. At his booking, he was found with Loh's telephone diary and some Malaysian notes. Loh identified Quinerly as well as these items at trial.

After he was read his Miranda rights, Quinerly denied any involvement in the assault. He said his friend had given him the keys to the car so he could go to the store. He claimed to have found the telephone diary and money on the floor of the car. He also stated that he had been in a substance abuse facility in Fall River for the previous four days, and that he had wrecked his car the night before Loh was abducted.[4]

---

[4] There was evidence at trial from a Boston Police Officer that the night before the abduction he had reported to the scene of an accident in Dorchester involving Quinerly, who's

-4-

The police obtained a search warrant for Quinerly's apartment the night of his arrest. When they executed the warrant, they found Quinerly's girlfriend, Juliana Delaney, wearing Loh's pendant. They also found Loh's briefcase, portable computer and handbag in the apartment. Loh identified all of these items at trial.

According to the record, Quinerly told his counsel about a week before trial that his girlfriend, Delaney, had told him that the police had started their search before they obtained the search warrant. Trial counsel confirmed this with Delaney. However, when counsel asked Delaney to swear to these facts in an affidavit, she declined to do so without counsel, after being advised that her claims might subject her to prosecution for receiving stolen property.

Trial counsel informed the trial judge of Delaney's allegations on the first day of trial. He asked the judge to appoint counsel for Delaney, which was done. After speaking with an attorney, Delaney invoked her right against self- incrimination. As Quinerly described the facts in his direct appeal brief, "Counsel's expressed reason for not filing the motion to suppress was because the defendant's girlfriend would not sign the affidavit. ('She is the only person of majority who was present at the time other than the police officers. Mr. Quinerly was not there. So she is my, if you will, sole witness as to the time of the search which might have something to do with the actual validity,

---

Chevrolet had been badly damaged.

whether the search was pursuant to a warrant or not.'  Tr. Vol. II, p. 64)."  SA Ex. 1 at 20.

## Prior Proceedings

Following a jury trial in Suffolk Superior Court, Quinerly was found guilty on November 5, 1991 of all charges against him – three counts of aggravated rape and kidnapping, armed robbery, and assault by means of a dangerous weapon.  On November 6, 1991, Quinerly filed a timely notice of appeal.

While his appeal was pending, on March 30, 1993, Quinerly filed a motion for a new trial with the trial court, and obtained a stay of his direct appeal.  SA Ex. 1 at 4.  In this motion, Quinerly alleged that trial counsel was ineffective in failing to call the petitioner as a trial witness, and in failing to hire an investigator, or obtain the rape kit, or to call the examining doctor, in order to impeach the victim's credibility.  SA Ex. 7 at C.A. 3-14.  He also cursorily argued that trial counsel should have moved to suppress the evidence seized from the apartment because the search warrant was illegal.[5]  SA Ex. 7 at 8.  Quinerly's appellate counsel filed a request for an evidentiary hearing on the motion for post-conviction relief on or about September 30, 1993.

---

[5]  This issue was not addressed by the trial judge in her decision years later denying the motion.  See discussion, infra.

**The Direct Appeal**

In April, 1994, the Massachusetts Appeals Court dissolved the stay of Quinerly's direct appeal, and proceeded to hear his appeal.  The direct appeal raised the issues whether the trial venue was improper in Suffolk County, and whether trial counsel was ineffective "in failing to properly investigate and thereafter file a timely motion to suppress physical evidence purportedly seized pursuant to a warrant."  SA Ex. 1 (Quinerly's Brief on Direct Appeal) at 18.  The basis for this claim was that trial counsel should have filed a motion to suppress based on Delaney's assertion that the search at the apartment occurred before the officers obtained a warrant and at a different time as set forth in the police reports.  SA Ex. 1 at 18-19.  Since, absent a motion to suppress, "the seized evidence, which inferentially established a strong link between the defendant and the victim, was admissible . . . the defendant was basically forced to present a weak and untenable defense and assume a very unsympathetic defense posture, consent."  Id. at 22.[6] While recognizing that his girlfriend had refused to provide an affidavit verifying her version of events, Quinerly argued that trial counsel should have filed a motion to suppress nevertheless, supported by his own affidavit concerning his conversation with

---

[6]  It is alleged that since the victim had been unable to identify the defendant's picture during two photo arrays, Quinerly originally intended to challenge the identification of the perpetrator.  Once the items seized from his apartment were introduced into evidence, the defendant "virtually conceded identification" and argued that the events were consensual.  SA Ex. 1 at 23.

Delaney, or he should have sought a continuance to further investigate the matter.  SA Ex. 1 at 25.

The Appeals Court confirmed the convictions on November 28, 1994. Commonwealth v. Quinerly, 37 Mass. App. Ct. 1121, 643 N.E.2d 1066 (1994) (table); SA Ex. 3.  In a Memorandum and Order Pursuant to Rule 1:28, the Appeals Court found that there was no error in failing to dismiss on the grounds of improper venue, and that "[t]here is no merit to the argument that trial counsel was ineffective."  SA Ex. 3. Quinerly then filed an application for leave to obtain further appellate review ("ALOFAR") with the Massachusetts Supreme Judicial Court ("SJC") raising the same grounds as his direct appeal.  SA Ex. 4.  Thus, he again argued that suppression was warranted because the search preceded the warrant.  SA Ex. 4 at 14.  The ALOFAR was denied without opinion on January 23, 1995.  Commonwealth v. Quinerly, 419 Mass. 1106, 646 N.E.2d 1070 (1995) (table); SA Ex. 5.

## The Motions for a New Trial

Quinerly's motion for a new trial remained pending before the trial court.  While his motion for an evidentiary hearing was allowed on December 5, 1995, hearings were not held until July 19 and September 22, 2000.  On March 13, 2001, the trial judge issued a Memorandum of Decision and Order denying the motion.  SA Ex. 7 at C.A. 3. Quinerly filed a timely notice of appeal.  On June 22, 2001 Quinerly filed a motion for reconsideration, which was denied on July 23, 2001.  Id.

On August 8, 2001, Quinerly filed a pro se document entitled a "traverse." Id.[7] This was treated by the court as a second motion for a new trial. Therein, Quinerly argued that trial and appellate counsel were ineffective for failing to try and suppress all evidence because he was arrested based on a teletype identifying the alleged perpetrator of a rape, and that the teletype was issued without probable cause.[8] See SA Ex. 6 (Quinerly's pro se appellate brief) at 1-5. He "essentially argued that any evidence seized from the car he was driving as well as any evidence seized from his apartment (the search warrant for the apartment was based, in large part, on information the police learned after stopping the car the petitioner was driving) be suppressed." Opp. at 2-3. Quinerly also argued that the search warrant for his home was illegal because it was issued before a criminal complaint. SA Ex. 6 at 26-32. In addition to challenging the merits of Quinerly's claims, the Commonwealth argued that these claims had been waived. See SA Ex. 7. The "traverse" was denied on August 16, 2001, and Quinerly filed a timely notice of appeal.

---

[7] All of Quinerly's pro se pleadings are very difficult to understand. This court has attempted to explain the pleadings to the best of its ability, reading the record in the light most favorable to Quinerly.

[8] According to the Appeals Court, "[a]part from describing the assailant as a black male, the teletype indicated that the suspect was a man in his twenties, between 5'10" and 6' tall, weighing between 160 and 180 pounds, with a medium build, close cropped black hair, who was clean shaven and had full lips, a wide nose, a dark complexion and gave his name as Jerry. The defendant, a twenty-eight year old black male who stood approximately 6 feet tall and weighed about 235 pounds at the time of his arrest, matched the description in several material respects." Commonwealth v. Quinerly, 58 Mass. App. Ct. 1105, 789 N.E.2d 1093 (table), 2003 WL 21373162, ***2 n.1 (No. 02-P-829 June 13, 2003) (record citations omitted); SA Ex. 9.

The Massachusetts Appeals Court issued an unpublished Memorandum and Order Pursuant to Rule 1:28 denying Quinerly's appeal on June 13, 2003. Commonwealth v. Quinerly, 58 Mass. App. Ct. 1105, 789 N.E.2d 1093 (table), 2003 WL 21373162 (No. 02-P-829 June 13, 2003); SA Ex. 9 (hereinafter "Quinerly II"). As the Appeals Court held, the trial judge properly treated the "traverse" as a motion for new trial, and "[b]ecause the claims were sufficiently developed in the law at the time of his direct appeal," and as of the time of his first motion for a new trial, "the claims are waived." Therefore, the court "examine[d] the claims to see whether the defendant has met his burden of showing that the errors, if any, created a substantial risk of miscarriage of justice." Id. at 2003 WL 21373162, *1. It concluded that he had not.

The first issue that Quinerly raised was "that he should have been afforded a suppression hearing to determine whether the teletype that he contends triggered his arrest, as well as the subsequent search of his home and seizure of evidence, was justified by probable cause. Intertwined with this argument is the defendant's claim that the search warrant was invalid because it preceded the issuance of the criminal complaint." Id. (record citations omitted). The Appeals Court rejected this argument because "[c]ontrary to the defendant's contention, he was arrested for larceny of a motor vehicle, not because he matched the description of the suspect in the teletype. His arrest came after police spotted him getting into a vehicle that matched the precise description of a car that had been reported stolen by the victim only six days earlier." Id. (record citations omitted). Since there was probable cause for the arrest for larceny of a motor vehicle,

Quinerly's claim that "the search of his home was tainted by his illegal arrest" failed.  Id.

Furthermore, Quinerly's claim that the search warrant was invalid because it preceded the

issuance of a criminal complaint failed as a matter of law.  Id.  Finally, the court found

that even if the disputed items had been suppressed, "the evidence of the defendant's guilt

was overwhelming" so there was no substantial risk of a miscarriage of justice.  Id. at

***2.

The Appeals Court also rejected Quinerly's claim "that trial and appellate counsel

were ineffective failing to present his suppression claim."  Id.  Since the suppression

argument was without merit, it was not ineffective for counsel to fail to present the claim.

Id.

The last claim raised by Quinerly was that "the grand jury should only have been

permitted to consider the teletype (because the evidence obtained thereafter should, he

asserts, have been suppressed) and that the teletype, standing alone, could not sustain the

indictments."  Id.  This argument was rejected not only because it was based on an

invalid premise about suppression, and mischaracterized the description contained in the

teletype, but because "his contention that a grand jury may not consider evidence that is

ultimately suppressed is incorrect as a matter of law."  Id.

Following the denial of the appeal of his traverse, Quinerly filed an ALOFAR with

the SJC.  SA Ex. 10.  Therein he argued that trial and appellate counsel were ineffective

for failing to obtain a hearing on a motion to suppress, and that suppression was

warranted for the same reasons argued to the Appeals Court.  See generally SA Ex. 10 at

6-13.  The application was denied on September 5, 2003.  <u>Commonwealth v. Quinerly</u>,

440 Mass. 1102, 795 N.E.2d 573 (2003) (table); SA Ex. 11.

On January 31, 2005, Quinerly filed a state court petition for a writ of habeas

corpus with the SJC.  QSA Ex. 3.  Therein, the Petitioner asserted, inter alia, "that the

indictments and the mittimus committing him to prison were not properly authenticated."

Opp. at 3.  The case was transferred to the Worcester Superior Court, where the

Department of Correction filed a motion to dismiss.  On May 31, 2005, the Department

of Correction's motion to dismiss was allowed and the state habeas petition was

dismissed.

Meanwhile, Quinerly filed the instant petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254 on December 1, 2003.  (Docket No. 3).

<b><u>The Habeas Petition</u></b>

Quinerly's <u>pro se</u> petition raises eight grounds for relief.  The Respondent has

expanded upon the supporting facts for these grounds to include additional information

from the habeas petition, in an effort to make the grounds clearer.  Since there is no

objection from the Petitioner, the court will quote the Respondent's description of the

grounds raised by the Petitioner:

(1)    <u>Ground One</u>: conviction obtained by evidence gained in violation of
       petitioner's 4th Amendment protections against illegal search and seizure
       and denial of full and fair opportunity to dispute admissibility.

       <u>Supporting Facts</u>: Petitioner was denied his right to an exclusionary hearing
       to dispute the inclusion of evidence gained due to an unlawful detention,

-12-

premised upon a teletype construed as a general warrant for arrest and seizure.

(2)     Ground Two: conviction obtained by evidence gained in violation of defendant's 4th Amendment protections against illegal search and seizure and denial of full and fair opportunity to dispute admissibility.

Supporting Facts: Petitioner was denied an opportunity to contest the inclusion of evidence obtained by a false document purported to be a lawful search warrant presented to the girlfriend at the petitioner's residence who was threatened when he attempted to view the document, petitioner was denied the opportunity to present these claims.

(3)     Ground Three: conviction obtained without allowance of the petitioner to present witnesses in his defense in violation of 5th Amendment.

Supporting Facts: Petitioner actively and vigorously promoted the testimony of his girlfriend, both as witness in support of the suppression of illicit evidence and to support the defense theory of consent by the purported 'victim' to the totality of events occurring up to the point of the "victim's" abrupt departure. The Court erroneously accepted hearsay representations of the absent attorney, appointed to the witness. Further the Court neglected to account for the witness surety appearance bond. Further the alleged statement was an invocation of 5th Amendment protections against self-incrimination. This statement was entered into the record in defiance of the witness appearance at the hearing and sworn affidavit.

(4)     Ground Four: ineffectiveness of appellate counsel in completely and totally disregarding the petitioner's attestments (sic) and assertions.

Supporting Facts: Appellate counsel was aware or should have been aware of all the above assertions (excepting the deceptions of trial counsel at post trial) and was instructed by the petitioner as to the claims to file and pursue, yet in complete and total disregard to the petitioner's wishes appealed frivolous and unwarranted issues. In absolute defiance to the petitioner/appellant's instructions.

(5)     Ground Five: ineffective assistance of counsel in both the single assertion and the sum of all allegations. Additionally for failure to defend separate claims presented forthwith.

<u>Supporting Facts</u>: Counsel defied the petitioner's claims and desires to present witnesses, twice defined the petitioner's demands to move for an evidentiary hearing.

(6)    <u>Ground Six</u>: ineffective assistance of counsel in both the single assertion and the sum of all such allegations.  Additionally for failure to defend the separate claims presented forthwith.

<u>Supporting Facts</u>: Denied petitioner's demand for further process on the denial of the Court's rejection of defense witness testimony.

(7)    <u>Ground Seven</u>: ineffective assistance of counsel in both the single assertion and the sum of all such allegations.  Additionally for failure to defend the separate claims presented forthwith.

<u>Supporting Facts</u>: Failed to honor petitioner's demand to amend jury instructions and failure of the attorney to object to the introduction of the medical report without benefit of supporting testimony, denying the petitioner's demand to subpoena the medical examiners, threatening the petitioner with a trial disruption and his withdraw[al] should he object to the court as to the manner of his defense.

(8)    <u>Ground Eight</u>: ineffective assistance of counsel in both the single assertion and the sum of all such allegations.  Additionally for failure to defend the separate claims presented forthwith.

<u>Supporting Facts</u>: Deceiving the court in post-conviction proceedings as to the substance of pre-trial instructions and conversations and their timing relevant to the trial.

<u>See</u> Mem. at 1-3.  Additional facts will be provided below where necessary.

### III.  <u>ANALYSIS</u>

### A.    <u>Standard of Review</u>

The standard of review to be applied to Quinerly's habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under this standard, a federal habeas court may not

grant a writ of habeas corpus unless the underlying state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

28 U.S.C. § 2254(d)(1).  As the United States Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts ....  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.

Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002).  An "unreasonable application is different from an incorrect one."  Id.  In order to reach the level of "unreasonable," "some increment of incorrectness beyond error is required."

McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (internal citation and quotation omitted).  This increment "need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court."  Id.  Thus, a habeas petitioner "must do more than merely identify an incorrect result."  Jackson v. Coalter, 337 F.3d 74, 81 (1st Cir. 2003).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."

Williams v. Taylor, 529 U.S. 362, 411, 120 S. Ct. 1495, 1522, 146 L. Ed. 2d 389 (2000).

See also Horton v. Allen, 370 F.3d 75, 79-80 (1st Cir. 2004).

### B.    Grounds Four - Eight: Failure to Exhaust State Court Remedies

The Respondent contends that the points raised as Grounds Four through Eight of

Quinerly's habeas petition alleging ineffective assistance of counsel have never before

been presented to the state courts.  It is firmly established that, barring exceptional

circumstances, "a habeas petitioner in state custody may not advance his or her

constitutional claims in a federal forum unless and until the substance of those claims has

been fairly presented to the state's highest court."  Barresi v. Maloney, 296 F.3d 48, 51

(1st Cir. 2002).  In Massachusetts, this means that the federal claims raised in the habeas

petition must have been raised in the ALOFAR presented to the SJC.  See Adelson v.

DiPaola, 131 F.3d 259, 263 (1st Cir. 1997).

The legal theories presented as grounds for relief must be the same in both the

state and federal courts.  Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987), and cases cited.  In

order to "fairly present" a claim to the state court, "the petitioner must have fairly

presented the substance of his federal habeas claim to the state court," "[i]t is not enough

that the same facts underly the claims."  Id.  See also Baldwin v. Reese, 541 U.S. 27,

31-32, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  The principal purpose of this

doctrine is to "protect the state courts' role in the enforcement of federal law and prevent

disruption of state judicial proceedings."  Rose v. Lundy, 455 U.S. 509, 518, 102 S. Ct.

1198, 1203, 71 L. Ed. 2d 379 (1982).  In other words, the exhaustion doctrine serves to

-16-

give state courts the "first opportunity to review all claims of constitutional error." Id. at 518-19, 102 S. Ct. at 1203.

The Petitioner has the burden of satisfying the exhaustion requirement. Barresi v. Maloney, 296 F.3d at 51. Where there is a failure to do so, "[t]he defect is a fatal one, for federal habeas oversight is not a freewheeling construct. It is dependent, among other things, upon all of the claims asserted in the petition having been exhausted in the state courts." Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988).

The Respondent contends that all the claims alleging ineffective assistance of counsel, Grounds Four through Eight, are barred by the failure of Quinerly to raise them below. Quinerly, through counsel, does not dispute that some of the issues had not been raised below. However, he contends that Grounds Five and Six, as he interprets them in the context of other Grounds, are consistent with the claims he asserted in the ALOFARs he submitted to the SJC. Quinerly and the Respondent interpret the bases of each Ground asserted differently. Compare Mem. at 13 with Opp. at 5-6.

The bases asserted for the claims in the habeas petition are not at all clear. However, "courts hold pro se pleadings to less demanding standards than those drafted by lawyers." Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000). Consequently, "[t]his court will interpret [Quinerly's] pro se pleadings liberally to construe his claims for the purposes of this adjudication." Neverson v. Bissonnette, 242 F. Supp. 2d 78, 84 (D. Mass. 2003). aff'd on other grounds, Neverson v. Farquharson, 366 F.3d 32 (1st Cir. 2004).

-17-

The record is clear that three claims of ineffective assistance of counsel were presented to the SJC by Quinerly. These grounds, which will be labelled Four, Five and Six, are as follows:

> Ground Four: Whether trial counsel was ineffective for failing to investigate and file a timely motion to suppress the evidence seized from the apartment pursuant to the warrant on grounds that the search preceded the issuance of the warrant.

The issue was presented in the ALOFAR filed pursuant to Quinerly's direct appeal. SA Ex. 4 at 13-19.

> Ground Five: Whether trial and appellate counsel were ineffective for failing to file a timely motion to suppress all the evidence seized from the car and the apartment on the grounds that Quinerly was arrested based on a teletype identifying the alleged perpetrator of a rape, and the teletype was issued without probable cause.

This issue was presented to the SJC in the ALOFAR filed after the denial of Quinerly's traverse. SA Ex. 10 at 8-19.

> Ground Six: Whether trial and appellate counsel were ineffective for failing to file a motion to suppress on the basis that the search warrant was issued prior to the issuance of a criminal complaint.

This issue also was presented in the ALOFAR filed after the denial of Quinerly's traverse. SA Ex. 10 at 8-9, 13.

Since these three claims were presented in the ALOFARs, and it is obvious that Quinerly has attempted to raise these claims in addition to others which have not been exhausted, this court recommends that Grounds Four through Eight in the habeas petition be stricken, and replaced with Grounds Four through Six as described above. To the

extent that Quinerly has attempted to raise other claims of ineffective assistance of counsel, they should be dismissed as unexhausted.

### C.    **Procedural Default**

Another limitation on habeas review is that a federal court may not reach the merits of a habeas petition where the state court proceeded on an independent state ground, such as waiver.  "A finding by a state court that a defendant procedurally defaulted a claim bars federal habeas corpus relief on that claim unless the defendant as a petitioner shows either cause for the default and prejudice from the claimed violation of federal law, or that a fundamental miscarriage of justice will result if the claim is not considered."  Gunter v. Maloney, 291 F.3d 74, 78 (1st Cir. 2002) (citing Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).  The doctrine of procedural default arises out of "the long-standing rule that federal courts do not review state court decisions which rest on 'independent and adequate state ground[s].'  Such independent and adequate state grounds exist where 'the state court declined to hear [the federal claims] because the prisoner failed to meet a state procedural requirement.'  In such a case, '[c]onsiderations of comity and federalism bar the federal court's review.'"  Simpson v. Matesanz, 175 F.3d 200, 205-06 (1st Cir. 1999) (internal citations and punctuation omitted), cert. denied, 528 U.S. 1082, 120 S. Ct. 803, 145 L. Ed. 2d 677 (2000).  "A procedurally defaulted claim may, however, be resurrected if the last state court granting review addresses a federal claim on its merits, thereby waiving the default."  Manisy v. Maloney, 283 F. Supp. 2d 307, 311 (D. Mass. 2003).

In Massachusetts, the rule that "a claim not raised is waived" is regularly enforced and "firmly established."  <u>Gunter</u>, 291 F.3d at 79, and cases cited.  It is equally well-established that the state appellate court's decision to review a case under a "miscarriage of justice" standard following a failure to object does not waive the need for a contemporaneous objection, and does not "create independent rights in habeas petitioners."  <u>Id.</u> at 79-80, and cases cited.  <u>Accord</u> <u>Burks v. Dubois</u>, 55 F.3d 712, 716 n.2 (1st Cir. 1995).

The Respondent contends that Grounds One through Three, raising claims of illegal search and seizure,[9] were procedurally defaulted since they were not raised in the Petitioner's direct appeal or in his first motion for a new trial at a time when the claims were sufficiently developed.  Ground Three, however, appears to be raising the issue of whether there should have been a motion to suppress because of Delaney's statement that the search preceded the warrant.[10]  This issue, along with the related ineffective assistance of counsel claim (redefined as Ground Four) were raised in Quinerly's direct appeal ALOFAR.  Thus, there is no procedural default of those claims.

Ground One raises Quinerly's claim that the evidence against him should be suppressed because he was arrested on the basis of a teletype that was issued without probable cause.  This coincides with the newly numbered Ground Five, which charges

---

[9]  Although not specifically identified, Respondent also seems to be including the related Grounds raising claims of ineffective assistance of counsel in his procedural default argument.

[10]  Quinerly's counsel thinks this was included in Ground Two, but does not explain what Ground Three includes.  <u>See</u> Opp. at 6-7.

ineffective assistance of counsel for failure to raise this claim.  The challenge to the arrest on the basis of the teletype (and the related ineffective assistance of counsel claims) were not raised during trial or on direct appeal, but were presented for the first time by Quinerly in his traverse.  At that time, according to the Appeals Court, it was "inter-twined" with Quinerly's claim "that the search warrant was invalid because it preceded the issuance of the criminal complaint."  Quinerly II; SA Ex. 9.  This latter challenge to the validity of the search warrant seems to be the claim asserted in Ground Two and the ineffective assistance of counsel claim renumbered by this court as Ground Six.

The record is clear that the "teletype" claims and the validity of the search warrant claims are procedurally defaulted.  The Appeals Court expressly found these claims to have been waived and that it was reviewing the claims only "to see whether the defendant had met his burden of showing that the errors, if any, created a substantial risk of miscarriage of justice."  SA Ex. 9.  Since waiver "is an adequate and independent state ground for the SJC's decision," the merits of Quinerly's claims cannot be reached unless he can establish an exception to the procedural default rule.  See Lynch v. Ficco, ___ F.3d ___, C.A. No. 05-2183, 2006 WL 336218, at *6 (1st Cir. Feb. 15, 2006).

### 1.    Exceptions to the Procedural Default Rule

In the event of a procedural default, federal habeas review nevertheless is available if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will

result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750, 111 S. Ct. at

2565.  Quinerly does not meet these requirements.

**<u>Cause</u>**

"In order to establish cause for the default, petitioner must demonstrate 'that some

objective factor external to the defense impeded [defense] counsel's efforts to comply

with the State's procedural rule.'" <u>Magee v. Harshbarger</u>, 16 F.3d 469, 471-72 (1ˢᵗ Cir.

1994)  (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed.

2d 397 (1986)).  Here, there was no external factor which precluded counsel from filing a

motion to suppress.  Moreover, "the mere fact that counsel failed to recognize the factual

or legal basis for a claim, or failed to raise the claim despite recognizing it, does not

constitute cause for a procedural default." <u>Murray</u>, 477 U.S. at 486-87, 106 S. Ct. at

2644.  "So long as a defendant is represented by counsel whose performance is not

constitutionally ineffective under the standard established in <u>Strickland v. Washington</u>,"

466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant "bear[s] the risk of

attorney error that results in a procedural default." <u>Murray</u>, 477 U.S. at 488, 106 S. Ct. at

-22-

2645.[11]  Thus, the issue is whether there was ineffective assistance of counsel constituting "cause" to excuse the procedural default.

### Ineffective Assistance of Counsel

"A habeas petitioner complaining of ineffective assistance of counsel as a basis to show cause for procedural default must show (1) 'that counsel's representation fell below an objective standard of reasonableness,' Strickland, 466 U.S. at 688, and (2) that 'any deficiencies in counsel's performance [were] prejudicial to the defense,' id. at 692, in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' id. at 694." Lynch v. Ficco, 2006 WL 336218, at *7.  Assuming, arguendo, that this court were to reach the ineffective assistance of counsel claim, but see note 11, supra, Quinerly cannot meet this standard.

The standard of review of a claim of ineffective assistance of counsel for failure to move to suppress was established in Kimmelman v. Morrison, 477 U.S. 365, 106 S. Ct 2574, 91 L. Ed. 2d 305 (1986).  As the Court held:

> The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.  In order to prevail, the defendant must

---

[11] Ineffective assistance of counsel may constitute "cause" for failing to object at trial. See Gunter, 291 F.3d at 81.  However, when "the habeas petitioner wants to use ineffective assistance of counsel to establish cause to excuse a state procedural default, that ineffective assistance claim must itself ordinarily be fairly presented to the state courts and exhausted." Id. See also Edwards v. Carpenter, 529 U.S. 446, 452-53, 120 S. Ct. 1587, 1591, 146 L. Ed. 2d 518 (2000).  In the instant case, the claim of ineffective assistance of counsel was procedurally defaulted as well.

> show both that counsel's representation fell below an objective
> standard of reasonableness, and that there exists a reasonable
> probability that, but for counsel's unprofessional errors, the result of
> the proceeding would have been different.  Where defense counsel's
> failure to litigate a Fourth Amendment claim competently is the
> principal allegation of ineffectiveness, the defendant must also prove
> that his Fourth Amendment claim is meritorious and <u>that there is a
> reasonable probability that the verdict would have been different
> absent the excludable evidence in order to demonstrate actual
> prejudice</u>.

<u>Id.</u> at 374-75, 106 S. Ct. at 2582-83 (emphasis added) (citing <u>Strickland</u>, 466 U.S. at 686,

688, 694, 104 S. Ct. at 2064, 2068) (additional citation omitted)).  Thus, "[w]here the

claimed omission in ineffective representation is the failure to file a suppression motion,

the inquiry involves dual assessments.  '[T]he defendant must show that the constitutional

claim has merit and that there was a reasonable possibility that the verdict would have

been different without the excludable evidence.'"  <u>Commonwealth v. Anderson</u>, 58 Mass.

App. Ct. 117, 127-28, 787 N.E.2d 1136, 1144 (2003) (quoting <u>Commonwealth v.

Fletcher</u>, 52 Mass. App. Ct. 166, 169, 752 N.E.2d 754, 757 (2001) (additional citation

omitted)).

Quinerly cannot establish that a motion to suppress on the basis of the teletype was

meritorious, and, consequently, cannot establish that the failure to bring the claim was

ineffective assistance of counsel.  As the Appeals Court concluded, whether there was

probable cause for the issuance of the teletype is irrelevant, since Quinerly was arrested

for larceny of a motor vehicle, for which there clearly was probable cause.  SA Ex. 9.

Similarly, Quinerly's claim that the search warrant was invalid because it issued prior to

the criminal complaint was equally without merit as it is erroneous as a matter of law.

See, e.g., Commonwealth v. Grimshaw, 413 Mass. 73, 74, 595 N.E.2d 302, 303 (1992)

(search warrant obtained before arrest).  Thus, Quinerly cannot establish that his Fourth

Amendment claims were meritorious.

Nor can Quinerly establish that the verdict would have been different if the

evidence was excluded.  As the Commonwealth argued, in addition to the fact that the

victim identified Quinerly at trial:

> The defendant's identity as the victim's assailant was solidly
> established by his statement that he had totaled his Chevrolet the
> previous night and his use of the victim's car phone to call his friend
> Elroy Williams, both of which were confirmed by independent
> evidence.  The jury could also have considered the police officers'
> pre-arrest observations that the stolen car was parked in front of the
> defendant's home and that the defendant drove it away.  In this
> context, the defendant's possession of the other items stolen from the
> victim was simply the final nail in the already sturdy coffin.

SA Ex. 7 at 15-16 (record citations omitted).  In sum, the Petitioner has not established

cause to excuse his procedural default.

## **Prejudice**

Quinerly also has failed to establish prejudice in this case from the failure to

suppress the evidence.  "[A]n error generally is considered prejudicial if there is a strong

possibility that it affected the outcome of the trial."  Ouber v. Guarino, 293 F.3d 19, 33

(1st Cir. 2002).  As detailed above, there is no such strong possibility.  Thus, even

assuming there was an error committed, it was not prejudicial and does not excuse the

procedural default.

**Miscarriage of Justice**

Finally, "[e]ven absent a showing of cause and prejudice, a federal court exercising its habeas powers should nonetheless overlook a procedural default and hear a barred constitutional claim on the merits if its failure to do so would result in a fundamental miscarriage of justice." Burks v. Dubois, 55 F.3d at 717. As the Burks court explained:

> This is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence .... To be sure, a habeas petitioner need not prove his innocence beyond all doubt in order to reach the safe haven of the miscarriage exception: it suffices if the petitioner can show a probability that a reasonable jury would not have convicted but for the constitutional violation.

Id. at 717-18 (internal citations omitted). In the instant case, Quinerly does not claim that he is "actually innocent." In view of the evidence linking the defendant to the crime, he has failed to establish that his conviction resulted in a miscarriage of justice. For all these reasons, therefore, the claims raised in Grounds One, Two, Five and Six (as renumbered by the court) were procedurally defaulted.

**D.    The Merits**

For the reasons detailed above, this court has concluded that the claims of wrongful failure to suppress on the grounds that the search preceded the warrant (Ground Three), and the related ineffective assistance of counsel claim (Ground Four), were exhausted and were not procedurally defaulted. Nevertheless, this court recommends that

-26-

these claims be dismissed.[12]  The Appeals Court decision summarily dismissing these claims was not contrary to, or an unreasonable application of, well established Federal law.

Quinerly's counsel was faced with presenting a motion without any factual support.  Delaney refused to execute the affidavit.  She was given the opportunity to weigh the matter and consult with her own court-appointed attorney.  There is simply no support for the contention that counsel's representation fell below "an objective standard of reasonableness" by failing to pursue a motion for which he had no support.  Failure of counsel to submit his own affidavit, based solely on hearsay, does not constitute ineffective assistance of counsel.

---

[12]  As detailed above, even if the court were to reach the merits of the other claims, they should be dismissed as well since they lack merit.

Furthermore, Quinerly has included in the record an affidavit purportedly signed by Delaney on September 19, 2003.  QSA Ex. 8.  This affidavit does not support the contention that the search preceded the warrant.  Rather, Delaney contends that the police showed her a document which they said was a search warrant, but that they did not give her the opportunity to read it, and since she "did not know if a judge actually signed the search warrant the signature could have been forged."  <u>Id.</u>  This is insufficient to establish that the search was improper.

Finally, the Petitioner cannot establish a reasonable probability that the verdict would have been different if the evidence gathered from his apartment was suppressed.  In addition to the compelling evidence described above, there was also the evidence found in the car, which further supports the guilty verdicts.  There is no merit to the Petitioner's claim that his constitutional rights were violated by counsel's failure to attempt to suppress the evidence found in the apartment.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Respondent's Motion to Dismiss (Docket No. 31) be ALLOWED.[13]


                              / s / Judith Gail Dein
                              Judith Gail Dein
                              United States Magistrate Judge

_____

[13]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).