(4th Cir. 1967); United States v. Moderacki, 280 F.Supp. 633 (D.Del.1968). Others have not used this method of analysis. See Virgin Islands v. Berne, 412 F.2d 1055 (3rd Cir. 1969); Commonwealth v. Waughtel, 204 Pa. Super. 40, 201 A.2d 217 (1964).

The results underscore the divergence of viewpoint on the issue. In United States v. Vickers, supra, the Fourth Circuit Court of Appeals held that where evidence is produced voluntarily upon request of post office investigators, the evidence could not be suppressed even though no prior warning of rights was given. The court noted that the test was whether the defendant has "freely and intelligently [given] unequivocal and specific consent to search." 387 F.2d at 706.

In United States v. Moderacki, supra, the court held that evidence produced by the defendant must be suppressed unless the defendant was given the *Miranda* warnings and a specific warning that he has a right not to consent to search. The court also held that if the officers involved had effectuated a lawful arrest, the production of evidence by the defendant could be sustained as a search incident to a lawful arrest.

In Virgin Islands v. Berne, supra, the court held that since the defendant was not arrested there was no need to give the *Miranda* warnings before asking the defendant to produce evidence. The court apparently felt that no Fourth Amendment problems were created by the request to produce evidence.

Each of these cases recognizes, however, that the defendant has a right to refuse to produce evidence to agents of the Government and that a relinquishment of that right must be a free and voluntary act. The facts of this case show no way in which the arresting officers could have obtained the revolver if the defendant had not produced it or had refused them consent to search. No warrant had been obtained to search the defendant or the vehicle in which he was riding. There is no evidence that a search could be justified as an incident to a lawful arrest. Although the evidence does show an arrest since the defendant was deprived of his freedom of action in a significant way, there is no evidence that this arrest was lawful. See Miranda v. Arizona, 384 U.S. 436, 445, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); United States v. Thompson, 356 F.2d 216, 222 (2d Cir. 1965).

[1–4] Although the evidence in this case shows that the defendant's production of the gun was voluntary in the sense he was not deprived of it by physical force, there is no evidence that it was a free and intelligent act intended to be a knowing waiver. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); United States v. Smith, 308 F.2d 657 (2d Cir. 1962). As indicated above, the cases are not uniform in setting the requirements for a knowing and intelligent waiver in situations like that present here. *Moderacki* requires that the defendant be informed of his right to refuse to consent to a search. This court is not ready to impose such a requirement, however, especially where no search or consent to search is involved.

*Moderacki* also imposes a requirement that *Miranda* warnings be given and this requirement is discussed in *Vickers*. The primary objection to such a requirement is that the court in *Miranda* created the warnings for the express purpose of protecting the fifth amendment self-incrimination right. The fifth amendment applies only to testimonial self-incrimination and not the production of incriminating physical evidence. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); United States v. Vickers, supra. *Miranda* warnings dealing with the right to remain silent and the fact that anything said may be used against the accused are certainly tailored for protection against unknowing testimonial self-incrimination.

The right to counsel, and the *Miranda* warning informing the accused of this right, while imposed to protect fifth

---

amendment rights in *Miranda*, is more pervasive. It is not linked solely to the protection of fifth amendment rights but applies in every "critical" stage of the proceedings. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Certainly a request to produce evidence that is central to the prosecution's case is a critical stage of the proceedings against the accused. The presence of counsel is an effective check on the unknowing relinquishment of fourth amendment rights just as it is an effective check on the unknowing waiver of fifth amendment rights. Therefore, production of evidence by an accused without the assistance of counsel or without waiver of counsel where, as in *Miranda*, the defendant is under arrest, cannot be considered a knowing and intelligent act.

Accordingly, because of the failure of the arresting officers in this case to inform the defendant of his right to counsel prior to requesting the revolver and the absence of any mitigating circumstances, the motion to suppress must be granted.



Glen GRAYSON, by his next friend, John Grayson, Plaintiff,

v.

Samuel EISENSTADT, Elwood S. McKenney, Charles I. Taylor, and Philip A. Tracy, Justices of the Roxbury District Court; Kessler Montgomery, Clerk of the Roxbury District Court; and Julius Goldstein, Assistant Clerk of the Roxbury District Court, Defendants.

Civ. A. No. 69-1098.

United States District Court
D. Massachusetts.

June 17, 1969.

Action by state probationer for declaration that certain alleged actions by officers of state court unconstitutionally coerced him into withdrawing his appeals to higher state court. The District Court, Julian, J., held that status of probationer who sought declaration under Civil Rights Act of 1871 was in fact that of a state prisoner seeking to challenge legality of his custody by resort to the federal courts and action could not be maintained in absence of exhaustion of state remedies.

Complaint dismissed.

1. **Habeas Corpus** ⟐45.3(1)

State probationer, who sought declaration under Civil Rights Act of 1871 that certain alleged actions by officers of state court unconstitutionally coerced him into withdrawing his appeals in court wherein he could obtain jury trial, was in fact that of a state prisoner seeking to challenge legality of his custody by resort to the federal habeas corpus and action could not be maintained in absence of exhaustion of state remedies. 28 U.S.C.A. §§ 1343(3), 2201; 42 U.S.C.A. § 1983; U.S.C.A.Const. Amends. 5, 6, 8, 14; M.G.L.A. c. 278 § 2.

2. **Habeas Corpus** ⟐3, 45.3(1)

Neither Civil Rights Act of 1871 nor Federal Declaratory Judgment Act may be used as substitute for habeas corpus so as to circumvent requirement that state defendant exhaust state remedies. 28 U.S.C.A. §§ 2201, 2254, 2255; 42 U.S.C.A. § 1983.

---

OPINION

Michael L. Altman, Boston, Mass., for plaintiff.

Office of Atty. Gen., Bruce G. McNeill, Asst. Atty. Gen., Boston, Mass., for defendant.

JULIAN, District Judge.

This is a civil action in which plaintiff, having been convicted in the Municipal Court of the Roxbury District of three criminal offenses, seeks a declaratory judgment, 28 U.S.C. § 2201, that certain alleged actions by officers of

that court unconstitutionally coerced him into withdrawing his appeals to the State Superior Court. The amended complaint characterizes the action as one arising under the Civil Rights Act of 1871,[1] 42 U.S.C. § 1983, to redress the deprivation under color of state law of rights, privileges and immunities guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments. Jurisdiction is founded upon 28 U.S.C. § 1343(3).

The plaintiff, Glen Grayson, is an eighteen-year-old high school senior residing with his parents in Roxbury, Massachusetts. The defendants are the four Justices, the Clerk and the Assistant Clerk of the Roxbury District Court in Boston.

The gravamen of the complaint is the plaintiff's allegation that, following his being sentenced by the district court, he announced his intention to appeal, whereupon the district court increased the severity of the sentences, thereby coercing plaintiff to withdraw the appeals and to forego trials de novo before a jury in the Superior Court.[2] This opinion can be better understood, however, in the light of a more complete recitation of the allegations.

Specifically, the amended complaint alleges that on November 20, 1968, plaintiff was tried in the Roxbury District Court for two counts of assault and battery and one count of trespass, both of which are misdemeanors under Massachusetts law. The amended complaint further alleges that at the termination of the trial the judge found plaintiff guilty on all three charges and sentenced him to concurrent *suspended* three-month sentences on the two assault and battery convictions, with the trespassing charge placed on file. Plaintiff alleges that these sentences were announced by the judge and repeated by the Assistant Clerk in open court; that the plaintiff

---

1. 17 Stat. 13.
2. There are no jury trials in the Roxbury District Court. (Tr. 129–30). Persons convicted of crimes in that court have

was asked whether he intended to appeal; and that counsel requested that the case be put over for fifteen minutes so that plaintiff might discuss the matter with his parents and attorney.

That request was granted, the amended complaint continues, and the plaintiff after consultation determined to appeal. The amended complaint further alleges that plaintiff's attorney communicated plaintiff's decision to the Assistant Clerk, who stated that the appeal would be noted and that plaintiff and his attorney could leave the courthouse. Plaintiff alleges that his attorney did in fact leave but that immediately thereafter the Assistant Clerk again called the case and plaintiff, who had lingered in the courthouse, was again brought before the Court. Plaintiff alleges that the trial judge, upon being notified of plaintiff's intention to appeal, increased the sentence on each charge by imposing a $20 fine on the trespass charge and by revoking the suspension of the three-month sentences previously imposed. The amended complaint also alleges that the trial judge ordered that plaintiff be held on $300 bail pending trial in the Superior Court and directed that plaintiff be taken into custody immediately, whereupon plaintiff, who lacked funds with which to post bail, was placed in the courthouse jail.

The amended complaint further alleges that plaintiff's father was advised by a court officer that plaintiff would be released immediately if the appeal were withdrawn. Plaintiff alleges that upon learning this, he (plaintiff) announced to the court that he would withdraw the appeal. He alleges that the trial judge thereupon ordered plaintiff released, withdrew the $20 fine on the trespass charge, suspended the sentences on the assault and battery charges (adding two years probation) and accepted the withdrawal of the appeal.

---

the right to appeal to the Superior Court and there to have their case tried *de novo* before a jury on the question of guilt. M.G.L. c. 278, § 2.

legedly coerced the plaintiff into withdrawing his appeals;

(2) an injunction prohibiting the defendants from refusing to accept and process plaintiff's appeals;

(3) an injunction prohibiting defendants from noting or recognizing any sentence except that allegedly imposed originally by the district court;[6] and

(4) such other relief as is just and proper.

On December 19, 1968, following a hearing, the Court, with the assent of the defendants,[7] issued a preliminary injunction restraining the defendants from enforcing that portion of the state court's order which subjected plaintiff to probation as a result of his convictions. On the same date, defendants filed a motion to dismiss and a motion that the Court abstain from exercising jurisdiction. Both sides briefed the legal issues raised by these motions, but on January 6, 1969, this Court deferred action on the motions until trial. A

Finally, the amended complaint alleges that plaintiff, after returning to his home, telephoned his attorney and related what had happened; that plaintiff indicated his continued desire to appeal; that the attorney returned that afternoon to the Roxbury District Court and attempted to file notices of appeal; and that the Assistant Clerk of Court refused to file, docket, or otherwise accept the notices of appeal.

Plaintiff contends that these alleged facts show a violation of his right, under the due process clause of the Fourteenth Amendment, to an unfettered exercise of his right to appeal, citing Worcester v. Commissioner of Internal Revenue,[3] 1966, 1 Cir., 370 F.2d 713, 718, and Marano v. United States,[4] 1967, 1 Cir., 374 F.2d 583, 585.[5]

The amended complaint seeks the following relief:

(1) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring unconstitutional the various alleged actions of the defendants, outlined above, which allegedly coerced the plaintiff into withdrawing his appeals;

---

3. In *Worcester* the trial judge told the defendant at the sentencing hearing that if he (the defendant) was not content to accept probation without appealing, but chose the alternative of appealing, he ran the risk that the sentence he would have to appeal from would be a jail sentence. The Court of Appeals held that "[t]he court was without right to bargain thus with the defendant, or to put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered." 370 F.2d at 718.

4. In *Marano* the Court of Appeals held that, absent aggravating circumstances, a defendant whose first conviction was reversed and who was retried and again convicted before the same judge could not then be given a longer sentence than that imposed originally. The defendant "should not have to fear even the possibility that his exercise of his right to appeal will result in the imposition of a direct penalty for so doing." 374 F.2d at 585.

5. Plaintiff also claims that the alleged resentencing amounted to double jeopardy (Fifth and Fourteenth Amendments), that the alleged increase in sentence constituted cruel and unusual punishment (Eighth and Fourteenth Amendments), and that the alleged imposition of bail under the circumstances violated his rights under the bail clause of the Eighth Amendment. In addition, he contends that he was deprived of his right to the assistance of counsel and of his right to be tried by a jury in the Superior Court (Sixth and Fourteenth Amendments).

6. Paragraph 1(a) of the prayer, appearing on page 6 of the amended complaint, requests an injunction enjoining the defendants, their agents, employees and persons acting in concert with them from:

"Maintaining on any court record in the Roxbury District Court a notation, writing or other form of communication other than that the plaintiff Glen Grayson was sentenced to a three months suspended and concurrent sentence on criminal complaints numbered 43144 and 43145 (assault and battery) and that criminal complaint numbered 43143 (trespass) was placed on file."

7. At the time the injunction first issued only the defendants Montgomery and Goldstein were parties to the case; however, by stipulation dated December 27, 1968, the four Judges of the Roxbury District Court were added as parties defendant and the preliminary injunction was conceded to apply to them as well.

courts would not provide the plaintiff with a speedy and effective means of obtaining relief." This gratuitous assertion does not relieve the plaintiff from the requirement that before seeking the intervention of this court he must first exhaust the remedies available in courts of the Commonwealth of Massachusetts.

It is ordered that the amended complaint be dismissed, without prejudice and without costs.



Sophia GRIMM, Plaintiff,

v.

WESTINGHOUSE ELECTRIC CORPORATION, Defendant.

Civ. 49021.

United States District Court
N. D. California.

June 17, 1969.

Action under Civil Rights Act for alleged discriminatory discharge. Defendant moved to dismiss and for summary judgment. The District Court, Zirpoli, J., held that the complaint was sufficient and timely and that plaintiff could maintain action although Equal Employment Opportunities Commission had not made finding of reasonable cause, but that plaintiff's showing was insufficient to oppose motion for summary judgment.

Judgment for defendant.

1. Civil Rights ⟬=13

Complaint alleging that defendant employer had willfully and intentionally violated Civil Rights Act in that employer discharged plaintiff because of her sex was sufficient. Fed.Rules Civ.Proc. rule 8(a) (2), 28 U.S.C.A.; Civil Rights Act of 1964, § 703(a) (1, 2), 42 U.S.C.A. § 2000e–2(a) (1, 2).

2. Civil Rights ⟬=13

Time limit for reconsideration prescribed by regulation governing Equal Employment Opportunities Commission is not jurisdictional, and plaintiff's failure to apply for reconsideration within time prescribed by regulation did not bar civil action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

3. Civil Rights ⟬=13

Plaintiff in civil rights employment case was not required to sue within 30 days of first notice from Equal Employment Opportunities Commission, rather than requesting reconsideration. Civil Rights Act of 1964, § 701 et seq., 42 U. S.C.A. § 2000e et seq.

4. Civil Rights ⟬=13

Action for alleged discharge in violation of civil rights law was not barred by lapse of 180 days since alleged act of discrimination, where delay was occasioned by time taken by Equal Employment Opportunities Commission in considering grievance. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

5. Civil Rights ⟬=1

Equal Employment Opportunities Commission has no legally binding power and its decisions are not binding on judicial resolution of charge. Civil Rights Act of 1964, §§ 701 et seq., 705, 706(a), 713(b), 42 U.S.C.A. §§ 2000e et seq., 2000e–4, 2000e–5(a), 2000e–12(b).

6. Civil Rights ⟬=13

Judicial proceedings arising out of alleged discriminatory employment practices are not appeals from action of Equal Employment Opportunities Commission, but rather trials de novo. Civil Rights Act of 1964, §§ 701 et seq., 705, 706(a), 713(b), 42 U.S.C.A. §§ 2000e et seq., 2000e–4, 2000e–5(a), 2000e–12(b).

7. Civil Rights ⟬=13

Discharged employee, who had filed charge with Equal Employment Opportunities Commission, was entitled to maintain action for alleged Civil Rights Act violations, although Commission had

not made finding of reasonable cause. Fed.Rules Civ.Proc. rule 23(a), (b) (2), 28 U.S.C.A.; Civil Rights Act of 1964, §§ 701 et seq., 703, 705, 706, 713(b), 42 U.S.C.A. §§ 2000e et seq., 2000e–2, 2000e–4, 2000e–5, 2000e–12(b).

8. Federal Civil Procedure ⟬=2539

Summary judgment for defendant in action for alleged discriminatory discharge in violation of Civil Rights Act was proper where defendant offered affidavit on personal knowledge that plaintiff had been discharged as unsatisfactory employee, and motion was opposed only by claim by plaintiff's attorney that plaintiff would prove that she was satisfactory employee and would place in issue material facts in defendant's affidavit. Fed.Rules Civ.Proc. rule 56(c, e, f), 28 U.S.C.A.; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

Severson, Werson, Berke & Bull, Nathan R. Berke, San Francisco, Cal., for defendant.

Gordon C. Gould, Redwood City, Cal., for plaintiff.

ORDER GRANTING SUMMARY JUDGMENT

ZIRPOLI, District Judge.

Plaintiff is a female. Under the terms of a collective bargaining agreement, she was employed by defendant in a probationary status for about five months as the first and sole female tool designer. On January 27, 1967, she was dismissed by defendant.

Several days after her dismissal, plaintiff filed with the Equal Employment Opportunities Commission (EEOC) a Charge of Discrimination. She claimed (1) that at the time of hiring she was promised daily overtime, whereas such overtime never materialized, and (2) that she was continuously harassed and intimidated on account of her sex and finally was dismissed without any reason therefor being given.

The Commission made an investigation and summarized the results as follows:

"* * * [T]he Charging Party was discharged for just cause. Namely, a poor work performance record, and a general poor work attitude. The Charging Party's personnel record reflected a poor attendance record, including frequent tardiness and numerous "days out." The Charging Party had an extensive record of personnel (sic) abuses toward her co-workers and supervisors. On several occasions the Charging Party had referred to other personnel with profane language and other manners of misconduct.

The Commission concluded that the close supervision of plaintiff was "due to her established pattern of misconduct on the job." With regard to the charge concerning overtime work, the Commission declined to make a determination in view of the conflict presented between Title VII and state law.

The Commission decided on July 27, 1967, that "[r]easonable cause does not exist to believe that the Respondent is in violation of Title VII of the Civil Rights Act of 1964 as alleged."

In August plaintiff requested reconsideration. The request appeared to have been presented beyond the prescribed five day time period, but the Commission nevertheless reexamined the case and determined that no evidence indicated discrimination against plaintiff on account of her sex. The Commission therefore denied the request for reconsideration on January 25, 1968, "as untimely filed."

Thereafter, plaintiff commenced the present civil suit, which defendant challenges by way of "Motion to Dismiss or for Summary Judgment." The bases of defendant's motion to dismiss are three: (1) That the statutory prerequisites for invoking judicial review, particularly a Commission finding of reasonable cause and a notice of failure of voluntary compliance, have not been satisfied; (2) That the statutory time limitations for